IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| SHANE O'NEAL and STACEY O'NEAL d/b/a SOUTHERN MARINE TOWING & SALVAGE, LLC; and SOUTHERN MARINE TOWING & SALVAGE, LLC d/b/a TOWBOATUS CHICKAMAUGA LAKE, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| | ) | CIVIL ACTION NO.: |
| v. | ) ) | |
| PROGRESSIVE HAWAII INSURANCE CORPORATION; PROGRESSIVE DIRECT INSURANCE COMPANY; ALFA MUTUAL INSURANCE COMPANY; MARKEL AMERICAN INSURANCE COMPANY; and FOREMOST INSURANCE COMPANY, | ) ) ) ) ) ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) ) | |

## COMPLAINT

Shane O'Neal and Stacey O'Neal d/b/a Southern Marine Towing & Salvage,

LLC and Southern Marine Towing & Salvage, LLC d/b/a TowBoatUS

Chickamauga Lake, Plaintiffs in the above-styled cause, complain of Defendants as follows:

## PARTIES

1.     Plaintiffs Shane O'Neal and Stacey O'Neal are citizens of the State of Georgia who, at the time of some of the events made the basis of this lawsuit, did business as Southern Marine Towing & Salvage, LLC.

2.     Plaintiff Southern Marine Towing & Salvage, LLC d/b/a TowBoatUS Chickamauga Lake is a Georgia limited liability company with its principal place of business in Fort Oglethorpe, Georgia. Its members are Shane O'Neal and Stacey O'Neal, who are both citizens of the State of Georgia.

3.     Defendant Progressive Hawaii Insurance Corporation (hereinafter sometimes referred to as "Progressive Hawaii") is an insurance company incorporated in the State of Ohio, with its principal place of business in the State of Ohio.

4.     Defendant Progressive Direct Insurance Company (hereinafter sometimes referred to as "Progressive Direct") is an insurance company incorporated in the State of Ohio, with its principal place of business in the State of Ohio.

5.    Defendant Alfa Mutual Insurance Company (hereinafter sometimes referred to as "Alfa") is an insurance company incorporated in the State of Alabama, with its principal place of business in the State of Alabama.

6.    Defendant Markel American Insurance Company (hereinafter sometimes referred to as "Markel") is an insurance company incorporated in the State of Virginia, with its principal place of business in the State of Virginia.

7.    Defendant Foremost Insurance Company (hereinafter sometimes referred to as "Foremost") is an insurance company incorporated in the State of Michigan, with its principal place of business in the State of Michigan.

8.    Hereinafter, the Defendants may be referred to collectively as "the Insurance Company Defendants."

## JURISDICTION AND VENUE

9.    Jurisdiction is appropriate pursuant to U.S.C. Title 28, § 1332 based upon diversity of the parties; and the amount in controversy exceeds $75,000.00.

10.    Venue is proper in this district under 28 U.S.C. § 90 and § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this district and division, specifically in Catoosa County, Georgia.

## FACTS

11.     This lawsuit is necessary because the Insurance Company Defendants (a) breached their agreement to fully pay Plaintiffs for services rendered at their request; (b) were unjustly enriched when Plaintiffs performed services but Defendants then refused to pay for those services; and/or (c) defrauded Plaintiffs when they hid and/or withheld from Plaintiffs that they did not intend to pay Plaintiffs even though Plaintiffs had justifiably relied upon Defendants' promise to pay. The entire situation arises out of events surrounding salvage, disposal, and environmental cleanup efforts following a deadly fire which occurred on or about January 27, 2020, on Dock B at the Jackson County Park and Marina in Jackson County, Alabama. This event involved the unnecessary deaths, injuries to, and property losses of many people.

12.     The marina is located on what is known as Dry Creek on the shore of the Tennessee River in Jackson County, Alabama. The fire began shortly after midnight, and Scottsboro police arrived minutes later to find the whole dock was on fire.

13.     Because the fire engulfed Dock B, Plaintiffs were notified by a representative of Jackson County, Alabama, that Plaintiffs' assistance was needed.

14.     Based upon the significance of the damage and danger to individuals, Plaintiffs dispatched boats, equipment, and other resources from their Fort Oglethorpe, Georgia headquarters and from their Guntersville Lake facility to aid in the recovery efforts.

15.     Shane O'Neal arrived on the scene of the fire in the early morning hours from Plaintiffs' Georgia headquarters where he was told by Carl E. Barnes, of Jackson County, Alabama, to begin salvage, disposal, and environmental cleanup of debris strewn throughout the Tennessee River as a result of the marina fire. Concerning payment for Plaintiffs' services, Barnes told Plaintiffs to contact the insurance carriers of the Dock B boat owners.

16.     Plaintiffs proceeded to gather information for the various insurance companies for all boat owners at Jackson County Marina's Dock B so Plaintiffs could establish contractual agreements to be paid for salvage, disposal, and environmental cleanup services for this entire, time-sensitive job.

17.     Plaintiffs contacted Defendants about how to get paid. Defendants gave Plaintiffs various claim numbers and instructed Plaintiffs to bill against those claim numbers. In instructing Plaintiffs to bill their services to the various claim numbers, Defendants never informed Plaintiffs that Plaintiffs would not be paid or that there was a possibility Plaintiffs would not be paid. Plaintiffs maintained every

belief and understanding they would receive payment in full for their services as Defendants had agreed.

18.     Plaintiffs entered into this oral contract with Defendants from Plaintiffs' Georgia headquarters. In accordance with that oral contract, Plaintiffs agreed to perform salvage, disposal, and environmental cleanup services in exchange for payment from Defendants. Furthermore, Defendants asked Plaintiffs to split the invoices up among the various claim numbers for three services: (1) salvage, (2) disposal, and (3) environmental cleanup, as was mandated by the Alabama Department of Environmental Management. Plaintiffs performed salvage, disposal, and environmental cleanup services over the next several weeks. Defendants instructed Plaintiffs to invoice the salvage and disposal costs based upon the lengths of each boat associated with a particular claim number; while asking that the environmental cleanup costs be divided almost in even amounts to each of the claim numbers. Furthermore, at no time during the establishment and/or performance of this oral contract for Plaintiffs' services did Defendants inform Plaintiffs that Plaintiffs would not receive compensation in full for Plaintiffs' services.

19.     Defendants induced and deceived Plaintiffs to perform their services under the representation and pretense that Plaintiffs would be compensated in full

for their services by Defendants. Defendants never warned Plaintiffs that

Defendants might decide at a later time to "stiff" Plaintiffs for some of the

invoiced services based upon alleged coverage disputes with Defendants' insureds

and/or for no articulated reasons at all.

20.     To date, Defendants have failed and/or refused to compensate

Plaintiffs, in whole or in part, for Plaintiffs' services. Specifically, Defendants have

failed to compensate Plaintiffs as follows:

    a.  Progressive Hawaii was billed $10,200.00 for salvage, **$3,400.00** for

        disposal, and **$14,031.12** in environmental cleanup cost charged to

        one of the claim numbers. While Progressive Hawaii has paid its

        salvage bill, charges for disposal and environmental cleanup charged

        to this claim number remain outstanding.

    b.  Progressive Direct was billed **$13,800.00** for salvage, **$2,990.00** for

        disposal, and **$13,247.04** in environmental cleanup cost charged to

        one of the claim numbers. Progressive Direct was also billed

        **$12,600.00** for salvage, **$4,200.00** for disposal, and **$17,332.56** in

        environmental cleanup charged to another claim number. Progressive

        Direct has not paid any of these amounts charged to those claim

        numbers.

c.  Alfa was billed $7,200.00 for salvage, **$2,400.00** for disposal, and **$13,247.04** in environmental cleanup cost charged to one of the claim numbers.. To date, Alfa has paid only $500.00 in salvage, leaving **$6,700.00** in salvage cost and all of the disposal and environmental cleanup charges unpaid. Alfa was also billed $3,260.00 in salvage cost to another claim number, of which **$2,374.45** remains outstanding.

d.  Markel was billed **$5,100.00** for salvage charged to one of the claim numbers. Markel failed to pay this amount.

e.  Foremost was billed $8,400.00 for salvage and recovery and **$13,247.04** in environmental cleanup cost charged to one of the claim numbers. While Foremost paid the $8,400.00 for salvage and recovery, it has refused to pay Plaintiffs for the environmental cleanup costs charged to the claim number.

21.  In total, Defendants have stiffed Plaintiffs for an estimated $124,669.25.

## COUNT I
## BREACH OF CONTRACT

22.  Plaintiffs hereby reallege and adopt all of the foregoing paragraphs as if more fully set out herein.

23.     Plaintiffs were given various claim numbers by Defendants and instructed by Defendants to bill their services to the corresponding claim number. In instructing Plaintiffs to bill against each claim number, Defendants never informed Plaintiffs that Plaintiffs would not be paid or that there was a possibility Plaintiffs would not be paid. Plaintiffs maintained every belief and understanding they would receive payment in full for their services as was promised by Defendants. Furthermore, at no time during those recovery efforts did Defendants inform Plaintiffs that Plaintiffs would not receive compensation in full for Plaintiffs' services. Defendants never warned Plaintiffs that Defendants might decide at a later time to "stiff" Plaintiffs for some of the invoiced services.

24.     Plaintiffs entered into this oral contract with Defendants from Plaintiffs' Georgia headquarters. In accordance with that oral contract, Plaintiffs agreed to perform salvage, disposal, and environmental cleanup services in exchange for payment from Defendants. Furthermore, Defendants asked Plaintiffs to split the invoices up among the various claim numbers for three services: (1) salvage, (2) disposal, and (3) environmental cleanup, as was mandated by the Alabama Department of Environmental Management. Plaintiffs performed salvage, disposal, and environmental cleanup services over the next several weeks.

25.     In failing to fully pay Plaintiffs, Defendants are in breach of contract. Plaintiffs performed completely, and Defendants should be required to perform fully.

26.     As a result of the breach of contract by Defendants, Plaintiffs have been harmed.

27.     Plaintiffs claim entitlement to the full payment of the amounts that Plaintiffs billed to Defendants.

28.     Plaintiffs therefore demand judgment for compensatory damages in such sum as the jury shall find just and appropriate, together with costs of this case, and for such other relief as this Court and the jury deem just and proper.

## COUNT II
## FRAUD AND DECEIT

29.     Plaintiffs reallege and adopt all of the foregoing paragraphs of the Complaint, as if more fully set out herein.

30.     Defendants made knowingly false representations to Plaintiffs with the intent to deceive and to induce Plaintiffs to perform salvage, disposal, and environmental cleanup services, while having an undisclosed present intention not to pay for all of those services that Defendants induced Plaintiffs to perform.

31.     Defendants represented to Plaintiffs that Plaintiffs would be paid in full for all services performed. Plaintiffs assented to perform salvage, disposal, and

environmental cleanup efforts in exchange for full compensation. All the while,

Defendants knew they had no intention of fully compensating Plaintiffs and/or that

Defendants were investigating alleged bases to later justify decisions to "stiff"

Plaintiffs.

32.     Plaintiffs reasonably relied on Defendants' representations that

Plaintiffs would be paid in full for all services performed as being true. Defendants

never warned Plaintiffs that they might later refuse to fully pay for the services that

Defendants induced Plaintiffs to perform.

33.     Defendants owed Plaintiffs a duty not to conceal material information

from Plaintiffs.

34.     Plaintiffs would not have engaged in salvage, disposal, and

environmental cleanup services for Defendants had Defendants truthfully informed

Plaintiffs that Plaintiffs would not be fully compensated. Plaintiffs performed free

labor and services for Defendants and at Defendants' request, which eliminated

Plaintiffs' opportunity to generate revenue on other business opportunities.

35.     Plaintiffs therefore demand judgment for compensatory damages in

such sum as the jury shall find just and appropriate, together with costs of this case,

and for such other relief as this Court and jury deems just and proper, including

punitive damages to deter such conduct by the Insurance Company Defendants and/or other companies like them.

36.     Defendants' wrongful actions described above were willful, intentional, in bad faith, and were performed with specific intent to cause harm, so as to entitle Plaintiffs to recover additional and punitive damages from each Defendant with no "cap" or limitation.

## COUNT III
## NEGLIGENT MISREPRESENTATION

37.     Plaintiffs reallege and adopt all of the foregoing paragraphs of the Complaint, as if more fully set out herein.

38.     Defendants misrepresented to Plaintiffs that they would fully compensate Plaintiffs for Plaintiffs' services.

39.     Defendants had no reasonable grounds to believe that these misrepresentations were true. Defendants intended to induce Plaintiffs to rely on their misrepresentations.

40.     Defendants knew that because of their misrepresentations, Plaintiffs would engage in salvage, disposal, and environmental cleanup services and invoice those services to the respective claim numbers.

41.     Plaintiffs were justified in relying upon Defendants' representations that Plaintiffs would be fully compensated for their services.

42.     Plaintiffs have been substantially harmed by Defendants' misrepresentations because Plaintiffs performed free labor and services for Defendants and at Defendants' request, which eliminated Plaintiffs' opportunity to generate revenue on other business opportunities.

43.     Plaintiffs therefore demand judgment for compensatory damages in such sum as the jury shall find just and appropriate, together with costs of this case as the fact finder deems just, plus interest, and for such other relief as this Court and jury deem just and proper.

44.     Defendants' wrongful actions described above were willful, intentional, and in bad faith and were performed with specific intent to cause harm, so as to entitle Plaintiffs to recover additional and punitive damages from each Defendant, with no "cap" or limitation.

## COUNT IV
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

45.     Plaintiffs hereby reallege and adopt all of the foregoing paragraphs as if more fully set out herein.

46.     At all times relevant to this litigation, Defendants were in relationships with Plaintiffs and owed a duty to Plaintiffs to act in good faith and deal fairly.

47.     Defendants breached that duty on more than one occasion by wrongfully utilizing Plaintiffs' services and financial interests for Defendants' own gain.

48.     Such acts and omissions leading to Defendants' breach of their duty to deal in good faith and fairly with Plaintiffs were the actual and proximate cause of harm to Plaintiffs.

49.     Defendants' conduct was outrageous, with its acts being done with reckless indifference to the interests of Plaintiffs.

50.     Plaintiffs therefore demand judgment for compensatory damages in such sum as the jury shall find just and appropriate, together with costs of this case as the fact finder deems just, plus interest, and for such other relief as this Court and jury deem just and proper.

## COUNT V
## UNJUST ENRICHMENT

51.     Plaintiffs reallege and adopt all of the foregoing paragraphs of the Complaint, as if more fully set out herein.

52.     At all times relevant to this litigation, Defendants owed a legal duty to Plaintiffs to not unfairly or unduly take advantage of Plaintiffs or commit wrongful acts in order to unjustly enrich themselves at Plaintiffs' expense or at the expense of Plaintiffs' financial interests.

53.     Defendants intended to induce Plaintiffs to rely on their

misrepresentations.

54.     Defendants knew that because of their misrepresentations, Plaintiffs

would engage in salvage, disposal, and environmental cleanup services and invoice

those services to the respective claim numbers.

55.     Plaintiffs were justified in relying upon Defendants' representations

that Plaintiffs would be fully compensated for its services.

56.     Plaintiffs performed free labor and services for Defendants and at

Defendants' request, which eliminated Plaintiffs' opportunity to generate revenue

on other business opportunities.

57.     Such acts and omissions leading to Defendants' unjust enrichment

were the cause of harm to Plaintiffs.

58.     Plaintiffs therefore demand judgment for compensatory damages in

such sum as the jury shall find just and appropriate, together with costs of this case,

and for such other relief as this Court and jury deems just and proper.

## <u>COUNT VI</u>
## <u>PROMISSORY ESTOPPEL</u>

59.     Plaintiffs reallege and adopt all of the foregoing paragraphs of the

Complaint, as if more fully set out herein.

60.     Defendants' promises to pay Plaintiffs for salvage, disposal, and environmental cleanup services were clear and unambiguous.

61.     Defendants have breached those promises.

62.     Plaintiffs relied upon Defendants' promises in agreeing to provide salvage, disposal, and environmental cleanup services. Plaintiffs' reliance was reasonable and foreseeable.

63.     Such acts and omissions leading to Defendants' "stiffing" Plaintiffs for their services was the cause of harm to Plaintiffs.

64.     Plaintiffs therefore demand judgment for compensatory damages in such sum as the jury shall find just and appropriate, together with costs of this case, and for such other relief as this Court and jury deems just and proper.

## COUNT VII
## ATTORNEY'S FEES AND EXPENSES

65.     Plaintiffs reallege and adopt all of the foregoing paragraphs of the Complaint, as if more fully set out herein.

66.     Plaintiffs seek recovery of damages for attorney's fees and expenses.

67.     Through the foregoing wrongful actions, Defendants have acted in bad faith, have been stubbornly litigious, and have put Plaintiffs to unnecessary trouble and expenses, thus entitling Plaintiffs to an award of attorney's fees and expenses of litigation.

WHEREFORE, Plaintiffs pray that a trial by jury be held, and that

judgement be entered in favor of Plaintiffs and against Defendants, for

compensatory damages as determined by the trier of fact to compensate Plaintiffs

for the injuries and damages proximately resulting from the conduct of Defendants,

for punitive damages  to deter this type of conduct in the future by Defendants

and/or all other similarly situated insurance companies, for attorney's fees and

expenses of litigation,  pre-judgment and post-judgment interest, court costs, and

all other relief to which they may be entitled.

**PLAINTIFFS DEMAND A TRIAL BY JURY.**

Submitted respectfully this 26th day of January 2022,

**/s/ Michael A. Sullivan**
Michael A. Sullivan (GA Bar No. 691431)

FINCH MCCRANIE, LLP
225 Peachtree St., Suite 1700
Atlanta, Georgia 30303
Phone: 404-658-9070
Fax: 404-688-0649
Email: msullivan@finchmccranie.com

**/s/ Kenneth B. Cole, Jr.**
Kenneth B. Cole, Jr. (ASB-0595-C56K)

(Application for admission *Pro Hac Vice*
pending)

17

/s/ **Andrew F. Banks**

Andrew F. Banks (ASB-3344-I37O)

(Application for admission Pro Hac Vice pending)

**OF COUNSEL:**
CONCHIN, COLE, JORDAN, & SHERROD
2404 Commerce Court SW
Huntsville, Alabama 35801
Phone: (256) 705-7777
Fax: (256) 705-7778
Email:  kenny@alainjurylaw.com
Email:  andrew@alainjurlaw.com


*Attorneys for Plaintiffs*